# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-172 (KBJ) |
| | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant Department of the Navy ("Defendant" or "Navy") entered into a contract for renewable energy with a company called SunPower Corporation ("SunPower") in the fall of 2011. Presently before the Court are cross-motions for summary judgment stemming from a request that Plaintiff Judicial Watch, Inc. ("Plaintiff") submitted to the Navy under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents relating to that contract. Since the filing of the complaint on February 1, 2012, the parties have worked diligently to narrow the scope of their dispute, and have succeeded such that there is now only one narrow issue for this Court to decide: whether Defendant properly redacted the names of the individual agency employees who signed an internal memorandum endorsing the contract. Because the Court finds that it lacks sufficient information to determine whether these names are exempt from disclosure under Exemption 6 of FOIA, Defendant's motion for summary judgment is **DENIED** without prejudice, and Plaintiff's cross-motion for summary judgment is **DENIED** without prejudice as well. Both parties will have an

opportunity to file motions consistent with the analysis provided below. A separate order consistent with this Opinion will issue.

## I. BACKGROUND

On September 30, 2011, the Navy entered into contracts for renewable energy with five companies, including SunPower. (Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s Facts"), ECF No. 18, ¶ 1.) The SunPower contract provided that the Navy would "purchase a minimum amount of renewable generated electricity, up to a maximum of 35,000,000 kwh, per year for 20 years from SunPower." (*Id.* ¶ 18.) Under the terms of the contract, the Navy is required to "pay SunPower for the renewable generated electricity that it supplies, up to the maximum of 35,000,000 kwh per year"; however, "[i]f SunPower cannot supply the renewable generated electricity it will not be paid." (*Id.*)

An unidentified Navy employee holding the title "Source Selection Authority" ("SSA") was ultimately responsible for the decision to enter into the contract with SunPower. (*Id.* ¶¶ 14-16.) In making this decision, the SSA had assistance from a Source Selection Board ("SSB"), which is a team of agency employees that is responsible for "evaluat[ing] proposals[] submitted in response to a solicitation for renewable generated electricity, and ma[king] recommendations to the SSA as to which offerors should be awarded contracts." (*Id.* ¶ 16.)[1] The SSA has the authority to

---

[1] The members of an SSB "are employees of the agency and represent the appropriate contracting, legal, logistics, technical, and other functional disciplines needed to evaluate proposals submitted in response to an agency solicitation." (Declaration of Russell P. Spindler ("Spindler Decl."), ECF No. 18-5, ¶ 9.) As a general matter, the SSB's goal is to "evaluate[] proposals against the evaluation criteria listed in the solicitation and provide[] a recommendation to the SSA." (*Id.*)

"accept, change, or reject [an] SSB's recommendation." (*Id.* ¶ 15.) In the case of the particular contract at issue here, the SSA ultimately adopted the SSB's recommendation and entered into the renewable energy contract with SunPower. (*Id.* ¶ 16.)

On October 21, 2011, several weeks after the contract was signed, Plaintiff sent a FOIA request to the Department of the Navy seeking information regarding the contracting process. (Complaint ("Compl.), ECF No. 1, ¶ 5.) Specifically, Plaintiff's request included:

A. Any and all records regarding[,] concerning or related to the $100,268,000 firm-fixed-price task order awarded to SunPower, Inc. on September 30, 2011 (ref. Contract Number N62583-10-D-0030, Task Order 0002).

B. Any and all records of communication between any official, officer or employee of the Department of the Navy and any official officer or employee of any other government agency, department or office regarding, concerning or related to the aforementioned task order.

C. Any and all records of communications between any official, officer or employee of the Department of the Navy and any officer, employee or representative of Lang, Hansen, O'Malley and Miller, a government relations firm headquartered in Sacramento, CA.

(*Id.* ¶ 5; Def.'s Facts ¶ 1.) After sending this FOIA request, Plaintiff received a letter of acknowledgement dated October 25, 2011, but the "letter did not state when Plaintiff could expect to receive a substantive response[.]" (Compl. ¶ 6.) Between October 25, 2011, and November 2, 2011, Defendant twice redirected Plaintiff's FOIA request, eventually assigning it to the Naval Facilities Engineering Command ("NAVFAC") in Port Hueneme, CA. (*Id.* ¶¶ 7-9.) During this time, Plaintiff received three more acknowledgment letters from Defendant, but none of these letters specified when Plaintiff could expect a substantive response to its request. (*Id.*) Plaintiff therefore filed the instant complaint in this Court on February 1, 2012, noting that "[o]ther than

to acknowledge receipt of the request and inform Plaintiff that its request was being processed, Defendant has failed to respond to the request in any manner." (Compl. ¶ 11)

After Plaintiff filed its complaint, Defendant produced two sets of documents responsive to Plaintiff's FOIA request. (*See* Joint Status Report, ECF No. 14, ¶ 3.) First, on May 31, 2012, Defendant sent Plaintiff a letter enclosing 120 pages of responsive documents. (*Id.*; Def.'s Facts ¶ 3.) Then, on July 2, 2012, Defendant provided a second batch of documents. (Def.'s Facts ¶ 5; *see also* Joint Status Report ¶ 3.) Among these documents were certain pages from a document dated December 17, 2009, and called a Business Clearance Memorandum ("Memorandum"), which "explained how NAVFAC evaluated 12 proposals that were submitted in response to a solicitation that NAVFAC had issued for renewable electricity, why NAVFAC awarded a multiple award contract to five of the 12 offerors, and why it also awarded task orders to three of the five offerors." (Def.'s Facts ¶ 5.) Defendant provided eighteen pages of the Memorandum to Plaintiff, including a signature page "containing the names and signatures of the four persons who prepared, reviewed, or approved" the Memorandum. (*Id.* ¶ 6; *see also* Def.'s Mot. for Summ. J., Ex. C, ECF No. 18-4.) Defendant withheld an additional 146 pages from the Memorandum on the grounds that these pages were not responsive to Plaintiff's FOIA request. (Def.'s Facts ¶ 11.)

On July 24, 2012, Plaintiff sent Defendant an email requesting, among other things, that Defendant produce the remaining 146 pages of the Memorandum. (*Id.* ¶ 10.) After reviewing the email, on August 24, 2012, Defendant provided a third set of documents comprised of six additional pages of the Memorandum, including "signatory

pages for the members of the Source Selection Board (SSB)." (*Id.* ¶¶ 13-14.) The six pages included two different signatory pages, which are "essentially duplicates, except that [one page] does not contain any actual signatures (just the names of the SSB members) while [the other page] contains three signatures and signing dates, as well as the names of the SSB members[.]" (*Id.* ¶ 14.) Significantly, although Defendant provided these signature pages, it redacted the names and signatures of the SSB members that appeared on the pages. In a cover letter sent with the six additional pages, Russell Spindler ("Spindler"), counsel to NAVFAC, asserted that the names were redacted pursuant to FOIA Exemption 6. (*Id.* ¶ 19.) After Defendant had produced these records, the parties stipulated that only the release of the names on the two sets signature pages remained in dispute. (Stipulation, ECF No. 16, at 1.)

On November 30, 2012, Defendant filed the instant motion for summary judgment, arguing that the names were exempt from disclosure under FOIA Exemption 6. As explained in more detail below, Spindler's cover letter and Defendant's summary judgment motion and memorandum argued only that the names were exempt from disclosure pursuant to Exemption 6, but Defendants also attached a declaration from Spindler that stated that the names were also exempt from disclosure under FOIA Exemption 5. Plaintiff filed an opposition and cross-motion for summary judgment on December 21, 2012, arguing that neither Exemption 5 nor Exemption 6 authorized redaction of the names.[2] Accordingly, the issue before this Court at present is whether

---

[2] Plaintiff also indicated that it sought to challenge the name redactions only with respect to one of the two sets of signature pages. (*See* Pl.'s Mem. of Law in Supp. of Cross-Mot. for Summ. J. ("Pl. Br."), ECF No. 21, at 3 (stating that "the only issue that remains in this case is Defendant's withholding of the information contained in the last two pages of the August 24, 2012, production, specifically, the names of the individuals" who signed the Memorandum).)

Defendant properly redacted the signatories' names pursuant to an applicable FOIA exemption. (*Id.*)

## II. LEGAL STANDARDS

### A. Summary Judgment in FOIA Cases

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also* Fed. R. Civ. P. 56. In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B); *see also In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92-93 (D.D.C. 2008). The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester. *See Wills v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008). As such, summary judgment for an agency is only appropriate after the agency proves that it has "fully discharged its [FOIA] obligations[.]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)).

A court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. FOIA Exemptions 5 And 6

FOIA "generally requires the disclosure, upon request, of records held by a federal government agency[.]" *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 18 (D.D.C., 2011). Specifically, FOIA provides in relevant part that:

> [E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3)(A). FOIA "was enacted to facilitate public access to Government documents[,]" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 174 (1991), in order to provide "a means for citizens to know what their Government is up to." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (internal quotation marks and citations omitted). However, "[i]n enacting FOIA, the Congress sought to balance the public's interest in governmental transparency against legitimate governmental and private interests [that] could be harmed by release of certain types of information."

*United Tech. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (internal

quotation marks and citations omitted).  To that end, "Congress included nine

exemptions permitting agencies to withhold information from FOIA disclosure."

*Judicial Watch v. Treasury*, 796 F. Supp. 2d at 23.  At issue in this case are Exemption

5 (5 U.S.C. § 552(b)(5)) and Exemption 6 (5 U.S.C. § 552(b)(6)).

      Exemption 5 protects "inter-agency or intra-agency memorandums or letters

which would not be available by law to a party other than an agency in litigation with

the agency."  5 U.S.C. § 552(b)(5).  "Congress intended to confine [Exemption 5] 'as

narrowly as [is] consistent with efficient Government operation.'"  *Senate of the Com.*

*of Puerto Rico on Behalf of Judiciary Comm. v. DOJ*, 823 F.2d 574, 584-85 ("*Puerto*

*Rico*") (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 868

(D.C. Cir. 1980)).  Under Exemption 5, three privileges are protected:  the work product

privilege, the attorney-client privilege, and the deliberative process privilege.  *Coastal*

*States Gas Corp.*, 617 F.2d at 862.

      Exemption 6 protects "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal

privacy[.]"  5 U.S.C. § 552(b)(6).  In determining whether an otherwise responsive

record qualifies for the protections of Exemption 6, a court must first determine that the

record fits into one of the relevant categories—*i.e.*, "personnel," "medical," or "similar

files."  If a record so qualifies, the court then determines whether disclosure of that

document "would compromise a substantial, as opposed to a *de minimis*, privacy

interest."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir.

1989) ("*NARFE*").  And finally, if the defendant successfully identifies a substantial

privacy interest, the court applies a balancing test that weighs the privacy interest in withholding the record against the public's interest in the record's disclosure. *Judicial Watch v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 45 (D.D.C. 2012) (citing *ACLU v. DOJ*, 655 F.3d 1, 12 (D.C. Cir. 2011)).

## III. ANALYSIS

### A. Defendant's Belated Assertion That The Signatories' Names Are Properly Withheld Under Exemption 5

Defendant now maintains that the signatories' names are exempt from disclosure under both Exemption 5 and Exemption 6 of FOIA. But, as mentioned above, Defendant's contention that FOIA Exemption 5 applies has arisen in a somewhat unorthodox manner. NAVFAC counsel Spindler originally indicated that the signatories' names had been redacted only pursuant to Exemption 6; moreover, in its brief supporting its summary judgment motion, Defendant argues only that Exemption 6 authorizes withholding the names. (*See* Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Br."), ECF No. 18, at 4-10.) However, in the declaration from Spindler that was submitted in conjunction with Defendant's brief, Spindler states that "while I did not state it in my letter of August 24, 2012, the names of the members of the SSB are also exempt from release pursuant to [Exemption 5], the deliberative process exemption, of FOIA as the SSB members provided predecisional recommendations to the SSA." (Declaration of Russell P. Spindler ("Spindler Decl."), ECF No. 18-5, ¶ 13.) Based on this assertion, Plaintiff took up the Exemption 5 issue in its own brief supporting its cross-motion for summary judgment. (*See* Pl. Br. at 6-7.) Defendant then responded to Plaintiff's arguments regarding Exemption 5. (*See* Def.'s Reply in Supp. of Mot. for Summ. J. ("Def. Reply"), ECF No. 24, at 2-4.) Thus, the

Court is confronted with the odd situation in which a plaintiff has prophylactically attacked a FOIA exemption that the defendant ignored when it moved for summary judgment.

Because courts usually "requir[e] all FOIA exemptions to be raised at the same time in the original district court FOIA proceedings," *Stonehill v. IRS*, 558 F.3d 534, 536 (D.C. Cir. 2009), it is not clear that the Exemption 5 argument in this case is even properly before the Court. Nevertheless, for the following reasons and out of an abundance of caution, the Court will address it.

First, avoiding the Exemption 5 issue here would not further the primary purpose of preventing a defendant from raising a FOIA exemption belatedly, which is to prevent abuse and delay of the litigation process. *See Maydak v. DOJ*, 218 F.3d 760, 764 (D.C. Cir. 2000). The prudential rule that requires the government to raise all of its exemptions at once is generally designed to foreclose the government from fully litigating one exemption, only to raise another if it loses. *Stonehill*, 558 F.3d at 538 (D.C. Cir. 2009) (noting that this rule is aimed at "preventing the government from playing cat and mouse by withholding its most powerful cannon until after the [d]istrict [c]ourt has decided the case and then springing it on surprised opponents and the judge") (internal quotation marks and citations omitted). But that scenario is not the case here, where the Exemption 5 arguments have been raised in the same time frame as the arguments related to Exemption 6.

In addition, the Court's consideration of the Exemption 5 issue will not prejudice any party, since consideration of an additional ground of exemption favors Defendant, and Plaintiff has already fully addressed this exemption in its briefing. Notably, the

record is also sufficiently developed for the Court to render a decision on the

Exemption 5 question. Thus, the Court concludes that it is appropriate to address the

question of whether the redactions at issue in this case could have been made pursuant

to FOIA Exemption 5, as well as FOIA Exemption 6.

Turning to the substance of that issue, there is no dispute that the specific

Exemption 5 protection the government is asserting here is the deliberative process

privilege. (*See* Pl. Br at 7; Def. Reply at 2-3.) The deliberative process privilege

applies when material that would otherwise have been responsive to a valid FOIA

request implicates the "decision making processes of government agencies[.]" *NLRB v.*

*Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks and citation

omitted). As with all FOIA exemptions, "[t]he agency has the burden of establishing

what deliberative process is involved, and the role played by the documents in issue in

the course of that process." *Coastal States Gas Corp*, 617 F.2d at 868. Moreover,

"conclusory assertions of privilege will not suffice to carry" the agency's burden.

*Puerto Rico*, 823 F.2d at 584-85 (internal quotation marks and citations omitted).

The purpose of the deliberative process privilege, "like the other privileges

within Exemption 5, [is] to (1) protect agency employees providing analysis and

opinions to superiors; (2) protect against premature disclosure of policies; and (3)

protect the public from the confusion of viewing preliminary and potentially inaccurate

rationales for eventual agency action." *Judicial Watch v. Dep't of State*, 875 F. Supp.

2d at 43. Additionally, the deliberative process exemption was created "because the

release of pre-decisional communications could jeopardize the candid and

comprehensive considerations essential for agency decisionmaking." *Putnam v. DOJ*,

873 F. Supp. 705, 712 (D.D.C. 1995) (citing *Coastal States Gas Corp.*, 617 F.2d at 866).

In order to qualify for the deliberative process privilege, a record must be both "predecisional" and "deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *see also Puerto Rico*, 823 F.2d at 585. A document is "predecisional if it was generated before the adoption of an agency policy[.]" *Judicial Watch v. FDA*, 449 F.3d at 151 (internal quotation marks omitted). Moreover, "[i]n determining whether withheld information is deliberative, courts consider whether the information was purely factual, or whether it reflects the give-and-take of the consultative process." *Judicial Watch v. Dep't of State*, 875 F. Supp. 2d at 44 (internal quotation marks and citations omitted). "Purely factual information is not protected by [Exemption 5] because it would generally be available through discovery and would not call into question agency discussion." *Id.* On the other hand, "materials embodying officials' opinions are ordinarily exempt." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). But it is important to note that this fact/opinion distinction is "not always dispositive." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 298 (D.D.C. 2007). Rather, "to fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment,* and the key question to consider is whether disclosure would tend to diminish candor within an agency." *Id.* (emphasis in original).

In asserting that Exemption 5 applies to the names on the redacted signature pages at issue here, Defendant relies solely on the fact that that the Memorandum itself was a predecisional document because the recommendation of the SSB as laid out in the

Memorandum was not binding on the SSA.  (Def. Reply at 3.)  This argument is unavailing for at least two reasons.  First, it obscures the fact that the Memorandum itself is not what is at issue—rather, the dispute between the parties concerns only the signature pages of the Memorandum.  These names themselves are indisputably "factual"; the names of those who signed the memorandum cannot be described as the "materials embodying officials' opinions," *Petroleum Info. Corp.*, 976 F.2d at 1434, nor do they "bear on the formulation or exercise of agency policy-oriented judgment," *Nat'l Park Serv.*, 503 F. Supp. 2d at 298.  Second, Defendant has not carried its burden of showing how the names implicate any deliberative process that may have gone into the creation of the Memorandum as a whole; indeed, Defendant has ignored the "deliberative" aspect of the deliberative process exemption entirely, offering no argument about "how or why the disclosure of the name[s of the signatories] would harm the agency decision making process," or "tend to diminish candor within an agency." *Nat'l Park Servs.*, 503 F. Supp. 2d at 298, 302.

These deficiencies are sufficient to dispose of Defendant's Exemption 5 argument.  Specifically, Exemption 5's deliberative process privilege does not authorize the name redactions because the signatories' names themselves are facts that do not qualify as predecisional, and in any event, Defendant offers no rationale for why the names should be considered deliberative (and none easily comes to mind).  Keeping in mind, too, that "Congress intended to confine [Exemption 5] 'as narrowly as [is] consistent with efficient Government operation[,]'" *Puerto Rico*, 823 F.2d at 584 (quoting *Coastal States Gas Corp.*, 617 F.2d at 868), this Court concludes that the signatories' names were not properly withheld under Exemption 5.

## B. Defendant's Argument That The Signatories' Names Can Be Withheld Pursuant To FOIA Exemption 6

As noted above, Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It is well established that the analysis under Exemption 6 requires, first, a determination of whether the document in question qualifies as a "personnel, medical, or similar file[]." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). Next, this Court must determine whether there is a "substantial" privacy interest in preventing the document's disclosure *NARFE*, 873 F.2d at 874, and if so, further engage in a balancing test that weighs "the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Multi Ag Media*, 515 F.3d at 1228.

### 1. The Names Qualify As "Similar Files" For Exemption 6 Purposes

In the instant case, the signatories' names indisputably do not constitute "personnel" or "medical" files, so the inquiry into whether the names constitute the type of records subject to Exemption 6 focuses on whether they can be considered "similar" files. Notably, "[t]he Supreme Court has interpreted the phrase, 'similar files' to include all information that applies to a particular individual," *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), and the Supreme Court has further recognized that "the protection of Exemption 6 is not determined merely by the nature of the file in which the requested information is contained." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601 (1982) (citing *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). This broad interpretation of the meaning of the phrase "similar file" has led courts to conclude that Exemption 6 protection not only relates to entire physical files,

14

but also encompasses "bits of personal information" that refer to a particular individual. *Judicial Watch v. FDA*, 449 F.3d at 152. In this regard, Courts have held specifically that Exemption 6 covers "such items as a person's name, address, place of birth, employment history, and telephone number[,]" *Lewis v. DOJ*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011) (citing *NARFE*, 879 F.2d at 875), notwithstanding the nature of the document or file within which this information appears. *See, e.g.*, *Coleman v. Lappin*, 607 F. Supp. 2d 15, 22 (D.D.C. 2009) (holding that "such items as individuals' names, titles, Social Security numbers, dates of birth, pay grades, union affiliations, and dates of duty" were properly withheld under Exemption 6).

Given this broad application, there is little doubt that the names at the end of the Memorandum satisfy Exemption 6's "similar file" categorization.

### 2. The Court Lacks Sufficient Information To Evaluate The Alleged Privacy Interest

Having concluded that the names qualify as "similar file[s]" and thus could be subject to protection under Exemption 6, this Court must now determine whether there is a substantial privacy interest that would be compromised if the signatories' names are disclosed.

#### i. *Defendant's Asserted Privacy Interest*

Defendant maintains that the signatories of the Memorandum have a substantial privacy interest in preventing disclosure of their names due to several possible negative consequences that the signatories might experience if their names are released. In particular, Defendant argues that releasing the names could result in "annoyance or harassment in the [signatories'] daily lives." (Def. Br. at 7, 10 (quoting *Lesar v. U.S.*

*Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980).)  Defendant further speculates that such harassment might result from "the publicity associated with the identity of SSB members' names[, which] could trigger hostility towards these employees" and that "these employees could become the target of harassing inquiries if their identities were released."  (Def. Reply at 6.)  Furthermore, Defendant asserts that "[p]ublicity regarding their work assignments may seriously affect [the signatories'] effectiveness in conducting other evaluations and recommendations."  (*Id.*)

As previously noted, in order to evaluate the signatories' asserted interest in keeping their names private under the circumstances presented, this Court must determine whether the asserted interest in privacy is a "substantial" one.  *See Multi Ag Media LLC*, 515 F.3d at 1229.  Courts have concluded that a "substantial privacy interest exists in avoiding embarrassment, retaliation, or harassment and intense scrutiny by the media that would likely follow disclosure," among other things. *Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012).  But it is important to note that the "use of the word substantial in this context means less than it might seem" because a "substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1229-30.

With respect to the interest in keeping one's name private, courts in this district have reached different, fact-bound conclusions regarding the substantial or *de minimis* nature of the privacy interest in preventing release of individual names.  *See NARFE*, 879 F.2d at 877 ("[D.C.] Circuit precedent establish[es] only that the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed").   It appears that "whether [disclosure of a list of names] is a significant

or *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Id.* at 877; *see also Ray*, 502 U.S. at 176 n. 12.  Recent decisions in this jurisdiction appear generally sympathetic to the argument that "[t]he privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that could conceivably subject them to annoyance or harassment in either their official or private lives[.]" *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) ("*EPIC*") (internal quotation marks and citations omitted); *see also Judicial Watch, Inc. v. Dep't of State*, 875 F. Supp. 2d at 47 ("There is a substantial interest in bits of personal information where there is a justified and articulable risk of media harassment" as a result of the release of such information.)   But it is also clear that the potential adverse consequences must be "real rather than speculative[,]" *EPIC*, 384 F. Supp. 2d at 116, and a bare assertion that a document's "disclosure would constitute a clearly unwarranted invasion of [an individual's] personal privacy" is not sufficient to establish that a substantial privacy interest in preventing disclosure exists. *Morley v. CIA*, 508 F.3d 1108, 1127-28 (D.C. Cir. 2007).  Rather, the agency must *demonstrate* that "disclosure would constitute a 'clearly unwarranted' invasion of personal privacy." *Id.*; *see also id.* at 1128 ("To the extent the [defendant] suggests that the privacy interest in biographical information is self-evident, it is mistaken."). Moreover, it is the agency that bears this initial burden.  *Judicial Watch, Inc. v. Dep't of State*, 875 F. Supp. 2d at 45.

Here, Defendant's effort to establish that negative consequences will befall the signators of the Memorandum is entirely speculative, and thus falls short of establishing

a substantial privacy interest. For the most part, Defendant's arguments consist of purely conclusory statements that a substantial or significant privacy interest is at stake. (*See, e.g.*, Spindler Decl. ¶ 13 ("The members of the SSB have a significant privacy interest in avoiding the disclosure of their names.").) And while Defendant does suggest that the signatories might be subject to "annoyance or harassment" or become the target of "harassing inquiries" if their names are released, it says absolutely nothing more about *who* would engage in such harassment and *why* this outcome is likely.

In this respect, the allegations here are readily distinguishable from those on which other courts have relied in determining that individuals did have a substantial privacy interest in their names under the circumstances presented. The court in *Judicial Watch v. Dep't of State*, for example, noted that there was significant media interest in the subject of the FOIA request at issue in that case, and that, as a result, the individuals whose names had been redacted from the records in question might be subject to negative media attention. 875 F. Supp. 2d at 47. Defendant has made no such allegation. Nor does Defendant argue that the nature of the signatories' jobs, or the nature of Plaintiff's organizational activities, will subject those who signed the Memorandum to possible annoyance or harassment, as was the case in *EPIC*. 384 F. Supp. 2d at 116-17. Indeed, Defendant does not even offer facts to suggest that disclosure may result in "embarrassment in [the signatories'] social and community relationships," as was the case in *U.S. Dep't of State v. Ray*. 502 U.S. at 176. And the redacted information here is limited to the signatories' names, which distinguishes this case from cases such as *Nat'l Park Serv.*, where additional information, such as individuals' names *and* addresses, was in question. 503 F. Supp. 2d at 306.

Finally, without more, Defendant's suggestion that the release of the signatories' names will impact their ability to perform their jobs effectively is not a persuasive reason for concluding that the names can be withheld under Exemption 6. Not only does Defendant provide no further reasoning or evidence to support this contention, but the assertion is really an Exemption 5 argument, not one that clearly implicates Exemption 6's privacy concerns. *See Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (noting that Exemption 5 "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism[]"). Unlike Exemption 5, Exemption 6 is not aimed at protecting the integrity of an agency's workflow; rather, its purpose is to avoid disclosures that "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). And Defendant has offered no rationale that connects the release of the names to any *privacy* interest that the signatories have in their ability to perform their duties effectively, much less any credible reason for why the release of the names of those who signed a work memorandum would have any effect on that performance.

In sum, while Defendant might be able to show that the signatories have a substantial privacy interest in avoiding the harassment or hostility that could result from the release of their names, Defendant has thus far failed to establish that the disclosure of the signatories' names would even potentially lead to such an outcome, and the Court will not speculate on the bases for Defendant's bald contention that there will be such adverse consequences. It is clear beyond cavil that the privacy interest a FOIA defendant asserts must be "more palpable than mere possibilities," *Rose*, 425 U.S.

at 380 n.19; therefore, the Court concludes that Defendant has thus far failed to carry its burden of demonstrating a substantial privacy interest in the signatories' names.

       ii.   *Next Steps*

Given that Defendant has identified a potential substantial privacy interest that might exist in this case but has failed to provide the necessary details for the Court to evaluate that interest, the Court will deny Defendants' summary judgment motion and permit Defendant to provide more information in the form of a revised motion and memorandum accompanied by additional declarations or affidavits, if it wishes to do so. *Cf. People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 178 n. 2 (D.D.C. 2011). ("[C]ourts often deny [a movant's] motion for summary judgment based upon vague or conclusory declarations and ask the [movant] to submit more detailed declarations."); *see also Sims v. CIA*, 642 F.2d 562, 566 (D.C. Cir. 1980) (observing that district courts have requested supplemental information regarding whether individuals have "any other privacy interests which might be compromised by disclosure" or any other "reason for objection to disclosure of [their] name[s]"). Defendants may refile their summary judgment motion in accordance with this Opinion and in accordance with the schedule set forth in the accompanying order. Any refiled motion should not only follow the procedural requisites set forth in the order, but should also reflect the fact that, if Defendants are able to carry their burden of showing a substantial privacy interest upon refiling, that will not end the Exemption 6 inquiry. Rather, when "a substantial privacy interest is at stake," the court must go on to "weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work

a clearly unwarranted invasion of personal privacy." *NARFE*, 873 F.2d at 874.

Plaintiff will therefore have an opportunity to submit a cross-motion for summary

judgment in response to Defendant's refiling, not only to oppose Defendant's

substantial privacy interest arguments but also to demonstrate that the public's interest

in discovering the names of the particular agency employees who signed the

Memorandum outweighs the Defendant's privacy interest such that disclosure does not

constitute a "clearly unwarranted invasion" of that interest. *Id.*

## IV.     CONCLUSION

For the reasons discussed above, Exemption 5 does not justify withholding the

names at issue, and Defendant has thus far failed to carry its burden of establishing that

there is a substantial privacy interest at stake for the purpose of Exemption 6. As a

result, Defendant's motion for summary judgment is **DENIED** without prejudice with

respect to the Exemption 6 issue. Because the Court is permitting Defendant to

provide more information related to the asserted privacy interests, Plaintiff's cross-

motion for summary judgment is **DENIED** without prejudice as well. To the extent that

the parties seek to proceed further with this matter, both parties are directed to  refile

their motions consistent with the accompanying order, providing the additional

information that this Opinion indicates will be necessary for the Court to make an

informed decision.


DATE:  March 17, 2014              *Ketanji Brown Jackson*
                                   KETANJI BROWN JACKSON
                                   United States District Judge